IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | Civil Action No. |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| VINOD GUPTA, | ) | |
| Defendant. | ) | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows:

### I.      SUMMARY

1.      From 2003 through 2007, Vinod Gupta, the former CEO and Chairman of infoUSA Inc. (now InfoGroup Inc.) ("Info"), engaged in fraud by receiving from Info approximately $9.5 million of unauthorized and undisclosed perquisites, including for the personal use of jets; costs associated with a yacht, homes, automobiles, and life insurance policies; personal credit card expenses; and club memberships and related costs.  For the same period, Info entered into related party transactions totaling approximately $9.3 million with two entities which Gupta controlled, and one entity with which he was affiliated, without disclosing the transactions in Info's public filings with the Commission.

2.      Separately, in March and April 2005, Gupta purchased 55,000 shares of Opinion Research Corporation ("ORC") after he had taken steps on behalf of Info to acquire ORC.  Info later acquired ORC.  In breach of his fiduciary duty to Info, Gupta failed to inform Info's other board members of the material fact that he had purchased ORC shares for his own benefit. Gupta obtained realized and unrealized ill-gotten gains from his ORC trading totaling approximately $240,700, which he has turned over to Info.

3.      As a result of this conduct, Gupta, directly and indirectly, has engaged in, and unless restrained and enjoined by this Court, will in the future engage in, transactions, acts, practices, and courses of business that violate Exchange Act Sections 10(b), 13(b)(5) and 14(a), [15 U.S.C. §§ 78j(b), 78m(b)(5), and §78n(a)] and Rules 10b-5, 13a-14, 13b2-1, 13b2-2, 14a-3 and 14a-9 thereunder [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, 240.13b2-2, 240.14a-3, and 240.14a-9] and that aid and abet violations of Exchange Act Sections 13(a) and 13(b)(2) [15 U.S.C. §§ 78m(a), and 78m(b)(2)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

4.      The Commission brings this action pursuant to the authority conferred upon it by Sections 21(d) and (e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)] for an order permanently restraining and enjoining Gupta; prohibiting Gupta from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; requiring Gupta to pay disgorgement, plus prejudgment interest thereon; imposing a civil money penalty; restricting Defendant's voting rights with respect to all shares of Info of which he is a beneficial owner; and granting other equitable relief.

## II.      DEFENDANT AND RELATED ENTITIES

5.      **Vinod Gupta**, 63, is a resident of Las Vegas, Nevada, but he and/or his immediate family also maintain homes in Omaha, Nebraska; Aspen, Colorado; Washington DC; Miami, Florida; Yountville and Hillsboro, California; and Maui and Kauai, Hawaii.  Gupta founded the predecessor company to Info in 1972, and brought the company public through an initial public offering in 1992.  From 1992 through August 2008, Gupta was Info's CEO and chairman.  From 1992 through August 2008, Gupta remained Info's largest single shareholder.

Gupta currently owns or controls approximately 36 percent of Info's outstanding shares.

6. **infoUSA Inc.** (now infoGROUP Inc.) is a Delaware corporation headquartered in Omaha, Nebraska that compiles and sells business and consumer databases for sales leads, mailing lists, and direct and email marketing. At all relevant times, Info has had a class of securities registered with the Commission under Exchange Act Section 12. Info's common stock trades on the NasdaqGS under the symbol "IUSA."

7. **Annapurna Corporation** (now Everest Corporation), a Nevada company formed in 1987, is controlled by Gupta. Gupta established Annapurna to own and/or manage certain of his personal assets and assets of his other entities, including his investments, interests in aircraft, an 80-foot yacht, and numerous homes. During the relevant period Annapurna was located in Info's Omaha offices.

8. **Aspen Leasing Services, LLC** ("Aspen Leasing"), a Nevada limited liability company formed in 2002, is controlled by Gupta. Aspen Leasing owns and leases vehicles. During the relevant period Aspen Leasing was located in Info's Omaha offices.

### III.     JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa. Venue lies in this Court pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10. In connection with the transactions, acts, practices, and courses of business described in this Complaint, Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails.

11. Certain of the transactions, acts, practices and courses of business constituting the violations of law alleged herein occurred within this district.

## IV.    FACTS

**A.    Unauthorized and Undisclosed Perquisites**

12.    From at least 2003 through 2007, Gupta received from Info approximately $9.5 million of unauthorized and undisclosed perquisites.  The cost of these perquisites was billed to Info either directly or through Annapurna and Aspen Leasing.

13.    Gupta exempted himself from Info's travel and entertainment and accounts payable policies, which required a valid business purpose and supporting documentation for all business expenses reimbursed by Info.  On many occasions, Gupta simply wrote "business development" on his expense reimbursement submissions.  On some occasions, Gupta did not provide any explanation to support his expenses.  On others, Gupta submitted false explanations and/or documentation to support expenses for which in fact there was insufficient or no legitimate business purpose.

14.    Gupta's expenses that were reimbursed by Info as business expenses included, among many others, costs related to private jet travel to Italy, the Virgin Islands, Cancun, Miami, and Las Vegas; travel and accommodations in South Africa; computers for his sons; 28 club memberships; over 20 automobiles; certain costs associated with a home in Aspen, Colorado and a winery in Napa Valley, California; and personal life insurance policy premiums.

15.    Following is a summary list of Gupta's unauthorized and undisclosed perquisites:

| **Perquisites** | **Amount** |
|---|---|
| Personal jet travel for Gupta, his family, and his friends | $3,104,000 |
| Costs associated with Gupta's yacht | $2,850,000 |
| Personal credit card expenses | $1,309,000 |
| Costs associated with homes in California, Aspen, Hawaii, and Washington DC | $482,000 |
| Costs for Gupta's personal employees, including his housekeeper | $518,000 |
| Costs for the lease or purchase of over 20 automobiles, including a Jaguar, two Mercedes, and a Hummer | $417,000 |
| Costs associated with 28 club memberships | $577,000 |
| Premiums for three personal life insurance policies | $173,000 |
| Free office space in Info's offices for Annapurna and Aspen Leasing | $38,000 |
| **Total:** | $9,468,000 |

16.     Info's 2003 through 2007 Forms 10-K, which incorporated by reference the company's proxy statements, which Gupta signed and certified, materially understated Gupta's compensation by excluding the nearly $9.5 million in perquisites he received, as summarized below:

| Description | 2003 | 2004 | 2005 | 2006 | 2007 | Total |
|---|---|---|---|---|---|---|
| Reported Perquisites | $6,000 | $6,000 | $7,000 | $113,000 | $818,000 | $950,000 |
| Actual Perquisites | $2,169,000 | $2,625,000 | $1,968,000 | $1,740,000 | $1,916,000 | $10,418,000 |
| Undisclosed Perquisites | $2,163,000 | $2,619,000 | $1,961,000 | $1,627,000 | $1,098,000 | $9,468,000 |

### B.    Related Party Transactions

17.     Prior to December 2004, Info did not have a related party transactions policy. During that time, Gupta unilaterally determined what transactions Info would enter into with Annapurna, Aspen Leasing, or other entities related to him. After 2004, Gupta failed to follow Info's related party transactions policy.

5

18. Gupta caused Info to mischaracterize, understate, and/or omit significant related party transactions between Info and entities related to Gupta. As a result, from 2003 through 2007 Info failed to properly disclose payments to, or on behalf of, entities related to Gupta totaling $9,297,000. Approximately $2.5 million of these undisclosed related party transactions are also reflected in the $9,468,000 paid to Gupta for unauthorized and undisclosed perquisites.

19. In its 2003 through 2005 Forms 10-K and proxy statements, Info disclosed that it paid Annapurna a total of $4,051,000 and described those payments as being for the "use of the aircraft and other travel expenses," or the "use of the aircraft and related services," or the "use of the aircraft." These disclosures were false and misleading because: (i) Info's payments to Gupta's entities included payments for items other than those related to aircraft; and (ii) significant amounts involving transactions with Gupta's entities were not disclosed.

20. Specifically, Info paid Gupta's entities to lease not only his aircraft, but also paid costs for Gupta's homes, yacht, and automobiles, and provided office space to Gupta's entities in Info's building rent free.

21. Further, Info materially understated the amount of related party transactions with Annapurna by failing to include a total of approximately $2.4 million in payments it made on Annapurna's behalf to a jet leasing company. To accomplish this, Gupta submitted invoices to Info that directed Info to pay part of the invoice to Annapurna and the remaining amount directly to the jet leasing company. The split of the payment between Annapurna and the jet leasing company reduced fraudulently the amount of related party payments that Info disclosed in its Commission filings.

22. Similarly, Info structured the purchases of two jet interests from Annapurna in a manner that concealed them from investors. Specifically, without board approval, in the fourth

6

quarter of 2003 Gupta directed Info to purchase a jet interest owned by Annapurna for approximately $1.1 million. The transaction was structured so that Annapurna sold the jet interest back to the jet leasing company and simultaneously Info acquired the jet interest from the jet leasing company, giving the false appearance that the purchase was from a third party. In an identically structured transaction, Gupta directed Info to purchase a second Annapurna jet interest in the third quarter of 2004 for approximately $1.7 million. Gupta retained control over both jet interests at all times. In this manner, the true related party nature of these transactions was concealed and Info failed to disclose them as related party transactions in its 2003 Form 10-K and proxy statement, and in its Form 10-Q for the third quarter of 2004.

23.   Similarly, Gupta concealed Info's purchase of four cars from Aspen Leasing in February 2005, for a total of approximately $182,000, which avoided disclosure in Info's Form 10-Q for the first quarter of 2005, and Info's 2005 Form 10-K and related proxy statement.

24.   Additionally, Gupta authorized Info to utilize Quest Venture Coordinators ("Quest") as the company's outsourcing arm in India. Gupta owned 30 percent of Quest's outstanding shares until approximately October 2003, and was a member of Quest's board through at least 2007. Gupta knew, or was reckless in not knowing, that Info failed to disclose approximately $3.9 million in payments from Info to Quest from 2003 through 2007 as related party transactions in Info's Forms 10-K and related proxy statements. Further, Gupta misled Info's independent auditor by telling it that Gupta did not have an ownership stake or board position with Quest.

25.   Gupta further signed management representation letters to Info's independent auditor that represented falsely that all related party transactions, including purchases and leasing arrangements, had been properly recorded and disclosed in Info's financial statements.

26. As a result of the foregoing, the amounts paid to, or on behalf of, entities related to Gupta during 2003 through 2007 were materially understated in Info's Forms 10-K and proxy statements, which Gupta signed and certified, by a total of $9,297,000, as shown in the following table:

| Description | 2003 | 2004 | 2005 | 2006 | 2007 | Total |
|---|---|---|---|---|---|---|
| **Leases With Gupta's Entities:** | | | | | | |
| Aircraft (paid to Annapurna) | $1,762,000 | $929,000 | $265,000 | $ - | $ - | $2,956,000 |
| Aircraft (paid to jet leasing company) | $1,346,000 | $836,000 | $179,000 | $ - | $ - | $2,361,000 |
| Homes (paid to Annapurna) | $100,000 | $120,000 | $ - | $ - | $ - | $220,000 |
| Yacht (paid to Annapurna) | $370,000 | $473,000 | $32,000 | $ - | $ - | $875,000 |
| Autos (paid to Aspen Leasing) | $41,000 | $58,000 | $ - | $ - | $ - | $99,000 |
| Rent free use of infoUSA's building by Gupta's Entities | $19,000 | $19,000 | $ - | $ - | $ - | $38,000 |
| Total Amount of Leases with Gupta's Entities | $3,638,000 | $2,435,000 | $476,000 | $ - | $ - | $6,549,000 |
| | | | | | | |
| Disclosed Amount of Lease Transactions With Gupta's Entities | $2,232,000 | $1,522,000 | $297,000 | $ - | $ - | $4,051,000 |
| Undisclosed Amount of Lease Transactions With Gupta's Entities | $1,406,000 | $913,000 | $179,000 | $ - | $ - | $2,498,000 |
| | | | | | | |
| Aircraft Purchased from Annapurna (not disclosed) | $1,099,000 | $1,650,000 | $ - | $ - | $ - | $2,749,000 |
| Autos Purchased from Aspen Leasing (not disclosed) | $ - | $ - | $182,000 | $ - | $ - | $182,000 |
| Quest Ventures (not disclosed) | $260,000 | $ 307,000 | $475,000 | $995,000 | $1,831,000 | $3,868,000 |
| **Total Undisclosed Related Party Transactions** | $2,765,000 | $2,870,000 | $836,000 | $995,000 | $1,831,000 | **$9,297,000** |

C. **Trading in ORC Securities**

27. Beginning in early 2005, Gupta became interested in having Info acquire ORC. On March 2, 2005, Gupta sent an email to an investment banker stating: "I think [ORC] will be

8

a great fit with us." At approximately the same time, Gupta made clear to an Info executive vice-president that Gupta was in "full pursuit" of having Info acquire ORC.

28.     On March 4, 2005, Gupta bought 5,000 ORC shares at approximately $7.17/share for his personal account. On April 11, 2005, he bought another 50,000 shares at approximately $7.16/share for his personal account. Gupta did not inform anyone at Info about these purchases.

29.     On approximately April 19, 2005, Gupta engaged a mergers and acquisitions attorney to prepare a research report regarding ORC, including specific information in connection with a proposed offer.

30.     Between April 15 and May 23, 2005, Gupta caused Info to purchase nearly 250,000 ORC shares for over $1.75 million as part of his overall effort to acquire ORC.

31.     On April 26, 2005, Gupta sent ORC a letter stating that Info would be willing to assist ORC in buying out other shareholders. On May 11, 2005, Gupta sent a letter to ORC's largest shareholder, who held nearly 28 percent of ORC's shares, stating that ORC is a "better fit" with Info; that Info could do a better job managing ORC; and that Info was interested in purchasing the shareholder's ORC shares. Gupta sent similar letters on the same date to four other major shareholders that in total owned another 29 percent of ORC's shares. Gupta sent these letters as part of his ongoing plan for Info to acquire ORC.

32.     On May 26, 2005, for the first time, Gupta informed Info's board of directors that he wanted Info to acquire ORC. Gupta informed the board at that time that he had purchased ORC shares for Info's account, but Gupta did not disclose his own purchases. Gupta requested that the board approve an offer to purchase all of ORC's outstanding shares for $10/share, which at the time represented a 38 percent premium.

33. At a June 7, 2005 meeting of Info's board of directors, the board authorized Gupta to engage in further discussions. Thereafter, between June 2005 and July 2006, Gupta led multiple negotiation sessions with ORC. Info's board was continually updated with respect to these discussions, but at no time did Gupta inform the board, or anyone else at Info, that he owned 55,000 ORC shares.

34. At the close of trading on Friday, August 4, 2006, Info announced its agreement to acquire ORC for $12/share. The transaction closed on December 4, 2006. Without informing anyone at Info, between August 7 and 9, 2006, Gupta sold 22,000 ORC shares resulting in profits of approximately $94,840. Gupta held his remaining 33,000 ORC shares, and his unrealized profits amounted to approximately $145,860.

35. Shortly after August 9, 2006, Info's board of directors learned for the first time that Gupta owned ORC shares. Info's Nominating and Corporate Governance Committee determined that Gupta violated the company's Code of Business Conduct and Ethics by failing (i) to disclose his ownership of ORC stock during the period Info was considering and negotiating the acquisition, and by failing (ii) to obtain pre-clearance from Info to sell ORC shares after Info executed the acquisition agreement on August 4, 2006. On this basis, the Nominating and Corporate Governance Committee and the independent directors of the Info board demanded that Gupta turn his profits over to Info and sell his remaining ORC shares to Info at cost, which he did.

## FIRST CLAIM FOR RELIEF
(Section 10(b) of the Exchange Act and Rule 10b-5)
15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5

36. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

37. Defendant directly and indirectly, with scienter, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or by use of the mails, has employed devices, schemes, or artifices to defraud; has made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or has engaged in acts, practices, or courses of business which have operated or would operate as a fraud or deceit upon any person.

38. By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Section 10(b) of the Exchange Act and Rule 10b-5.

## SECOND CLAIM FOR RELIEF
(Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9)
15 U.S.C. §78n(a) and17 C.F.R. §§ 240.14a-3 and 14a-9

39. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

40. Defendant, by use of the mails or by the means or instrumentalities of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission has prescribed, solicited or permitted the use of his name to solicit a proxies with respect to Info securities, which are registered pursuant to Section 12 of the Exchange Act.

41. Defendant, directly and indirectly, solicited proxy statements containing statements which, at the time and in light of the circumstances under which they are made, were false or misleading with respect to any material fact, or omitted to state material facts necessary

11

in order to make the statement therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which had become false or misleading.

42. By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9.

### THIRD CLAIM FOR RELIEF
(Section 13(b)(5) of the Exchange Act and Rule 13b2-1)
15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1

43. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

44. Defendant knowingly circumvented or knowingly failed to implement a system of internal accounting controls or falsified or caused to be falsified books, records or accounts of Info.

45. By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Section 13(b)(5) of the Exchange Act and Rule 13b2-1.

### FOURTH CLAIM FOR RELIEF
(Rule 13a-14 of the Exchange Act)
17 C.F.R. § 240.13a-14

46. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

47. Defendant certified falsely that to the best of his knowledge there were no untrue statements of material fact or omissions of a material fact necessary to make the statement made, in light of the circumstances under which such statements were made, not misleading in reports filed by Info under Section 13(a) of the Exchange Act.

48. By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Rule 13a-14 of the Exchange Act.

## FIFTH CLAIM FOR RELIEF
(Rule 13b2-2 of the Exchange Act)
17 C.F.R. § 240.13b2-2

49. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

50. Defendant made or caused to be made materially false or misleading statements to an accountant in connection with audits, reviews or examinations of Info financial statements or in the preparation or filing of Info documents or reports required to be filed with the Commission; or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews or examinations of financial statements or in the preparation or filing of Info documents or reports required to be filed with the Commission.

51. By reason of the foregoing, Defendant violated and unless restrained and enjoined will violate Rule 13b2-2 of the Exchange Act.

## SIXTH CLAIM FOR RELIEF
(Sections 13(a) and 13(b)(2) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13)
15 U.S.C. §§ 78m(a), and 78m(b)(2) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13

52. Paragraphs 1 through 35 are hereby realleged and incorporated by reference.

53. Info violated Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 (15 U.S.C. §§ 78m(a), and 78m(b)(2)(A) and (B) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13).

54. By engaging in the conduct described above, Defendant knowingly substantially assisted and therefore aided and abetted Info's violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

55. By reason of the foregoing, unless restrained and enjoined, Defendant will in the future violate Exchange Act Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining defendant, his agents, servants, employees, and attorneys-in-fact, and all persons in active concert or participation with them, from violating, directly or indirectly, the provisions of law and rules alleged in this complaint.

### II.

Order that Defendant pay disgorgement, including pre- and post-judgment interest, resulting from the violations alleged herein.[1]

### III.

Order Defendant to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] in an amount to be determined by the Court, plus post-judgment interest.

### IV.

Order that Defendant be permanently prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

V.

Order, that with respect to any and all matters presented for a vote of the stockholders of Info, or the taking of corporate action by the written authorization or consent of security holders, whether at an annual or special meeting of Info or otherwise, Defendant shall vote or cause to be voted all shares of Info of which he is a beneficial owner, as such term is defined in Rule 13d-3 of the General Rules and Regulations under the Securities Exchange Act of 1934, or shall grant authorization or execute consents with respect to all such shares, in proportion to the votes, authorizations or consents of the holders of all other outstanding shares of common stock who cast votes, grant authorizations or execute consents for or against the matter(s) presented, except for certain conditions.

VI.

Grant such other relief as this Court may deem just or appropriate.

Dated:  March 15, 2010

Respectfully submitted,

s/ Thomas J. Krysa
Thomas J. Krysa
Mary S. Brady
Ian S. Karpel
Rebecca L. Franciscus
Patricia E. Foley
Attorneys for Plaintiff
Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, Colorado 80202
Telephone: (303) 844-1000
Facsimile: (303) 844-1010

---

[1] In August 2008, Gupta agreed to pay Info $9 million in connection with a settlement of derivative action based on some of the same facts as are alleged in this complaint.  The Commission has taken that repayment into consideration with respect to its determination of disgorgement.